# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Lyle Brennan, Christopher Richard,
and Michael Lundell, on behalf of
themselves and other individuals
similarly situated,

Plaintiffs,

v.

Qwest Communications International,
Inc., Qwest Communications Corporation,
and Qwest Corporation,

Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 07-2024 ADM/JSM

_____

James H. Kaster, Esq., Jessica J. Clay, Esq., and Sarah M. Fleegel, Esq., Nichols Kaster & Anderson, PLLP, Minneapolis, MN, on behalf of Plaintiffs.

Robert R. Reinhart, Esq., Melissa Raphan, Esq., and Ryan E. Mick, Esq., Dorsey & Whitney LLP, Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On January 25, 2008, the undersigned United States District Judge heard oral argument on Plaintiff Lyle Brennan, Christopher Richard, and Michael Lundell's ("Plaintiffs") Motion for Conditional Class Certification and Judicial Notice [Docket No. 37]. On February 7, 2008, Plaintiffs submitted a Motion to Supplement the Record for Conditional Class Certification and Judicial Notice [Docket No. 85]. For the reasons set forth herein, Plaintiffs' Motion for Conditional Class Certification and Judicial Notice is granted and Plaintiffs' Motion to Supplement the record is denied as moot.

## II.  BACKGROUND

Plaintiffs are current and former network technicians for Defendant Qwest Communications International, Inc., Qwest Communications Corporation, and Qwest Corporation, foreign corporations, (collectively "Qwest") at various facilities throughout Minnesota.  Clay Aff. [Docket No. 40] ¶ 3, Exs. 7-14.  Qwest is a telecommunications company that provides internet service, cellular telephone service, long-distance telephone service, and digital television service to businesses and residential customers.  Id. Ex. 1.

As network technicians, Plaintiffs install, maintain, repair and test cable and equipment for telephone, cable television, and internet service.  Id. Ex. 2.  Plaintiffs are members of the Communication Workers of America ("CWA"), whose terms of employment are governed by a CWA collective bargaining agreement ("CBA").  Coddington Aff. [Docket No. 60] ¶¶ 4,5.  The CBA states that Qwest's overtime policy is that employees shall be paid for all time worked and pays employees one and one-half hours pay for "incidental overtime," time worked in excess of the employee's regularly scheduled shift.  Miles Aff. [Docket No. 63] ¶¶ 5(a), (b).  Network technicians get two fifteen-minute paid rest breaks and a thirty-minute unpaid lunch break.  Id. ¶ 5(e); Buchholz Aff. [Docket No. 59] ¶ 10.

Network technicians begin their workday at a Qwest garage and drive Qwest trucks to the customer's premises to perform their work.  Coddington Aff. ¶ 3; Lester Aff. [Docket No. 61] ¶ 6; Buchholz Aff. ¶ 5.  Qwest sets forth the following requirements for job performance: (1) that the technician "review all assigned work and commitment times before leaving the garage"; (2) that the technician start work at the assigned start time with his or her truck "ready to go, clean,

and stocked with materials for [the day's] work"; (3) the technician must "call [the] first customer and dispatch on [the] first work item within 30 minutes of [the] start time and prior to leaving [the] garage," this requirement further states that the start time for the first item needs to be the start time for the technician's shift; (4) that all "testable fault activity" be pre-tested by the technician before dispatch; and (5) that the technician complete time entry at the end of the work day.  Buchholz Aff. Ex. A.  Technicians are expected to leave the garage for the first job within fifteen minutes of the start time.  Id. Ex. C.  Technicians self-report their time worked using a TechTAD, a handheld key pad device.  Id. ¶ 6.

Network technicians are subject to the production standards set forth in the Quality Jobs per Day ("QJD") program (formerly known as the Effective Jobs per Day or "EJD").  Lester Aff. ¶ 3.  The QJD program utilizes a formula to compute the QJD score.  Clay Aff. Ex. 4 at 5.  The QJD score represents the number of "productive jobs" the technician completes within the total hours worked on a particular day.  Id.  The QJD score is calculated by first determining the total number of "productive jobs," the total number of jobs completed in the work day excluding "any type of rework following a completed dispatch within a 30 day window."  Id. Ex. 3.  The "total hours worked" used in the calculation includes all payroll hours, regular and overtime, but excludes any "entitlement time, paid union activities, or any excused time paid (jury duty, death in the family, etc.)."  Id.  Qwest correlates the QJD scores to the following classifications: more than satisfactory, satisfactory, less than satisfactory, and needs improvement.  Id. Ex. 5.  For example, a QJD score for a technician working on "plain old telephone service" ("POTS") of 5.16 or better is classified as "more than satisfactory," while a score of 4.3 or less falls in the "needs improvement" range.  Id.  Technicians whose QJD score classifies them as "less than

satisfactory" or "needs improvement" are subject to progressive discipline.  Id.  "Technicians will progress from Documented Discussion, to Written Warning, then Warning of Dismissal, and finally become subject to Dismissal."  Id.

Plaintiffs assert that Qwest's QJD policy forces them and other similarly situated employees to work without pay before and after their shifts, and during meal and rest breaks in violation of the Fair Labor Standards Act ("FLSA") and Minnesota Fair Labor Standards Act. Accordingly, Plaintiffs have brought this FLSA action on behalf of themselves and other similarly situated network technicians under  29 U.S.C. § 216(b).

In support of their Motion for Conditional Class Certification and Judicial Notice, Plaintiffs submitted the declarations of named and opt-in plaintiffs.  Each declarant states that he or she was required to work off-the-clock without compensation in order to comply with Qwest policies and meet the QJD score required by the company.  Brennan Decl. (Clay Aff. Ex. 7) ¶ 5; Lundell Decl. (Clay Aff. Ex. 8) ¶ 6; Guthrie Decl. (Clay Aff. Ex. 9) ¶ 4; Buckner Decl. (Clay Aff. Ex. 10) ¶ 4; Hendrickson Decl. (Clay Aff. Ex. 11) ¶ 4; Sullivan Decl. (Clay Aff. Ex. 12) ¶ 4; Richie Decl. (Clay Aff. Ex. 13) ¶ 4; Dietz Decl. (Clay Aff. Ex. 14) ¶ 4.  The declarants aver they performed the following required tasks while working off-the-clock: log into the required computer program, perform safety checks on the truck, receive the assigned work and route for the day, load the truck with supplies needed for the day's work, get customer credentials, make "pre-calls" to customers, complete paperwork, and report time.  Brennan Decl. ¶ 7; Lundell Decl. ¶ 15; Guthrie Decl. ¶ 5; Buckner Decl. ¶ 5; Hendrickson Decl. ¶ 5; Sullivan Decl. ¶ 5; Richie Decl. ¶ 5; Dietz Decl. ¶ 6.  Several of the declarants stated that their supervisors were aware that they worked off-the-clock and two declarants from different Qwest facilities

specifically stated that their supervisors instructed them not to report overtime.  Brennan Decl. ¶ 16; Lundell Decl. ¶ 8; Buckner Decl. ¶ 10; Hendrickson Decl. ¶¶ 11, 17; Richie Decl. ¶ 7; Dietz Decl. ¶ 9.

## III.  DISCUSSION

### A.      Motion for Conditional Class Certification

Plaintiffs move for conditional class certification pursuant to 29 U.S.C. § 216(b). Plaintiffs define the proposed FLSA class as: "all individuals who are, were or will be employed by Defendants in the State of Minnesota as Network Technicians at any time within three years of the filing of this Complaint until the final disposition of this action."  Compl. ¶ 18 [Docket No. 1].  29 U.S.C. § 216(b) provides that an employee may bring a collective action to collect unpaid overtime compensation against an employer "for and in behalf of himself or themselves and other employees similarly situated."  In order to join the action as a plaintiff, each employee must give written consent "and such consent [must be] filed in the court in which such action is brought."  Id.

To proceed with a collective action, Plaintiffs must demonstrate that they are similarly situated to the proposed FLSA class.  Determining whether Plaintiffs are similarly situated to the proposed class requires a two-step inquiry:

> First, the court determines whether the class should be conditionally certified for notification and discovery purposes.  At this stage, the plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan.  In the second stage, which occurs after discovery is completed, the court conducts an inquiry into several factors, including the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations.

Burch v. Qwest, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (quoting Dege v. Hutchinson

Tech., Inc., Civil No. 06-3754, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007) (unpublished)

(internal citations omitted)).

Because the parties have not completed discovery, this case is at the first step of the two-

step inquiry.  In determining whether Plaintiffs have come forward with evidence establishing a

colorable basis for their claim that they are victims of the QJD policy, the Court "does not make

any credibility determinations or findings of fact with respect to contrary evidence presented by

the parties at this initial stage." Dege, 2007 WL 586787, at *2.

Plaintiffs contend the similarly situated denominators they share with the members of the

proposed FLSA class are, as network technicians for Qwest, they are subject to the same job

requirements and are all subject to the same QJD policy.  Plaintiffs contend that the declarations

submitted in support of their Motion demonstrate that the QJD policy is enforced at seven

different Qwest facilities located across Minnesota.  They further assert that the declarations

demonstrate that numerous network technicians, reporting to different facilities and supervisors,

are required to work off-the-clock to complete required tasks because of the QJD standards.

Qwest contends that conditional certification is not appropriate because performance

expectations are not a common factor supporting collective action.  Further, Qwest contends that

because of the individualized nature of Plaintiffs' employment as network technicians, Plaintiffs

cannot establish they are similarly situated to the potential class.  Qwest also asserts that because

the QJD goals vary from year-to-year and among the different classes of technicians (broadband

versus POTS, for example) and because discipline under the QJD policy is an individualized

determination, Plaintiffs cannot establish they are similarly situated.  Finally, Qwest contends

that Plaintiffs are required to demonstrate that there is interest among similarly situated technicians to join the class, which Qwest contends Plaintiffs have not done.

The Court finds that Plaintiffs have met their burden for the purpose of conditional class certification at this early stage of the litigation. Plaintiffs' declarations demonstrate a colorable basis for the claim that Plaintiffs worked off-the-clock without compensation to complete required tasks and meet the requirements set forth for network technicians. Further, Plaintiffs' declarations demonstrate a colorable basis for the claim that Plaintiffs worked off-the-clock without compensation because of the QJD policy. The declarations also demonstrate a colorable basis for the claim that despite Qwest's policy of paying overtime, Qwest supervisors were aware that employees worked off-the-clock without compensation, took no action in response, and in two cases, encouraged employees to underreport their hours. Plaintiffs, despite reporting to different Qwest garages located throughout Minnesota and to different supervisors, all made similar allegations regarding the effect of the QJD policy. On this Motion, Plaintiffs' have a minimal burden and the Court "does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." Dege, 2007 WL 586787, at *2.

In arguing that conditional certification is not appropriate because performance expectations are not a common factor supporting collective action, Qwest cites Horne v. United Services Automobile Assoc., 279 F. Supp. 2d 1231 (M.D. Ala. 2003). Qwest contends that the court in Horne "held that employees were not similarly situated because the production standards were implemented and enforced by different managers." Defs.' Mem. in Opp. to Pls.' Mot. for

Conditional Class Certification [Docket No. 50] at 14.  Although Horne is of no precedential value, the Court will address it because Qwest relies heavily on it.

The court's holding in Horne is more narrow than Qwest construes it.  Horne did not set forth a per se rule that performance expectations cannot be the basis of an FLSA claim under § 216(b), nor did the court hold the plaintiff was not similarly situated to the proposed class members simply because the performance expectations were implemented by multiple supervisors.  The court denied the plaintiff's motion for conditional class certification because he failed to meet his evidentiary burden: he offered no evidence to demonstrate that any other employees had problems with the performance expectations or that any other supervisors instructed employees that the company would not pay overtime.  Id. at 1235.  The facts in Horne are distinguishable from the facts in the present case where Plaintiffs have offered declarations alleging they were subject to the same plan, that they worked off-the-clock in order to comply with the plan, and that the plan was enforced by various supervisors at facilities across the state.

Finally, it appears there are thirty-four individuals who have joined the present action. Plaintiffs have demonstrated sufficient interest among the proposed class.

**B.      Plaintiffs' Request to Supplement the Record**

After oral argument on Plaintiffs' Motion for Conditional Class Certification and Judicial Notice, Plaintiffs filed a Motion to Supplement the Record.  Plaintiffs request that the Court include the Declaration of Walter Engelhardt ("Engelhardt"), Clay Aff. [Docket No. 88] Ex. 1, in the record considered in support of Plaintiffs' Motion for Conditional Class Certification and Judicial Notice.  Because the Court is able to decide Plaintiffs' Motion for Conditional

8

Certification and Judicial Notice without relying on Engelhardt's declaration, Plaintiffs' Motion to Supplement the Record is moot.

**C.      Judicial Notice and Production of List of Employees**

Plaintiffs also request Court-facilitated notice and a requirement that Defendants produce a list identifying all Minnesota network technicians employed by Qwest within the past three years.  Plaintiffs submitted arguments in support of these requests and also submitted a proposed notice.  Defendants have not yet addressed these subjects in their briefing on the Motion.

"[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).  "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time."  Id. at 171.  "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.  This procedure may avoid the need to cancel consents obtained in an improper manner."  Id. at 172.  "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."  Id.

Facilitated notice is appropriate in this case.  Court-facilitated notice is necessary in order to prevent the expiration of claims based on the running of the statute of limitations and because of the size of the class and its geographic scope (numerous garages throughout Minnesota).

Having determined that conditional class certification and court-facilitated notice  is appropriate, the Court orders the parties to confer and jointly submit a proposed notice to the Court no later than Friday, April 18, 2008.  By the same date, the parties are ordered to confer and provide the court with a proposed order regarding the discovery of the potential members of the conditionally certified class.  In the event that the parties are unable to reach agreement regarding the proposed notice or order, they are instructed to contact the Court by Friday, April 18, 2008.

**IV.  CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.  Plaintiffs' Motion for Conditional Class Certification and Judicial Notice [Docket No.

37] is **GRANTED**;

2. Plaintiffs' Motion to Supplement the Record for Conditional Class Certification and

Judicial Notice [Docket No. 85] is **DENIED** as moot; and,

3.  The Parties are ordered to submit a proposed notice and an order regarding discovery

of the proposed class by Friday, April 18, 2008; in the event that the parties are unable to reach

agreement, they must contact the Court by that same date.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 25, 2008.