UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lyle Brennan, Christopher Richard, and
Michael Lundell, on behalf of themselves
and other individuals similarly situated,

Plaintiffs,

v.

Qwest Communications International, Inc.,
Qwest Communications Corporation, and
Qwest Corporation, foreign corporations,

Defendants.

Civil File No. 07-2024 (ADM/JSM)

**REPORT AND
RECOMMENDATION**

---

The above matter came before the undersigned United States Magistrate Judge upon this Court's January 19, 2010 Order to Show Cause [Docket No. 370]. James Kaster, Esq. appeared on behalf of plaintiffs; and Ryan Mick, Esq. appeared on behalf of defendants (collectively referred to as "Qwest").

## I. FACTUAL BACKGROUND

Plaintiffs are current and former Qwest Network Technicians who have joined together in a representative action under the Fair Labor Standards Act ("FLSA") to collectively allege that they had to work off-the-clock, before and after their shifts and during their lunches and breaks, in order to meet Qwest's productivity goals and not lose their jobs.

This action was divided into two Phases. Phase I addressed issues related to class certification and collective action decertification. Upon granting plaintiffs' motion for class certification, Phase I was completed. Pursuant to the Second Amended Pretrial Scheduling Order, plaintiffs and Qwest were required to and did submit proposals for Phase II of the case, including their respective views on the topics of bifurcation of liability and damages for trial, how the case should proceed in terms of

further discovery, deadlines for discovery, nondispositive and dispositive motions and a trial date, and the number and types of witnesses who will testify at trial.

Based on these submissions, and after consultation with District Judge Ann Montgomery, on October 23, 2009, this Court issued the Third Amended Pretrial Scheduling Order [Docket No. 362], which explained the rationale for bifurcating Phase II of this case into two stages[1] and set out the schedule for Stage One of Phase II. Included within this schedule was the development of and response to a questionnaire directed to each active Consent Plaintiff.[2] In this Order, the Court ordered

---

[1] Stage One at trial focuses on: (1) as to the plaintiff technicians who were subjected to Qwest's QJD policies and expectations, whether the QJD policies and expectations forced these plaintiffs to perform off-the-clock work; and (2) whether Qwest had actual or constructive knowledge that the QJD policies and expectations were causing the technicians to perform this off-the clock work. If the jury found that the QJD policies and expectations forced these plaintiffs to perform off-the-clock work, and that Qwest had actual or constructive knowledge that the QJD policies and expectations were causing the technicians to perform this off-the clock work, the case would then proceed to Stage Two. Stage Two of the trial focuses on whether plaintiffs performed off-the-clock work due to the Qwest's QJD policies and expectations, and the damages associated with that uncompensated time. See Third Pretrial Scheduling Order dated October 23, 2009, p. 2.

[2] Qwest sought to do some limited written discovery in the form of a questionnaire, and deposition discovery to assist it in deciding which plaintiffs to call at trial. Plaintiffs objected to the use of questionnaires given that all of the remaining plaintiffs had answered interrogatories and many had submitted to depositions. The Court determined that the questionnaire was an appropriate vehicle for written discovery, included it in the Third Amended Pretrial Scheduling Order, and put in place the process for finalizing its contents. See Third and Fourth Amended Pretrial Scheduling Order [Docket Nos. 362, 366]. Specifically, the Court directed Qwest to submit to plaintiffs a draft questionnaire to be executed by all active plaintiffs for the purpose of (1) addressing topics bearing on Stage One of Phase II, (2) discovering the amount of time each plaintiff claimed that he or she performed off-the-clock work due to the Qwest's QJD policies and expectations, and (3) the amount of damages that each such plaintiff was seeking for that uncompensated time. In the event that they could not agree on the contents of this questionnaire, the Court directed the parties to confer to resolve any issues with respect to the questionnaire, and as to those issues that were

2

in relevant part: "[E]ach active plaintiff shall submit to Qwest a sworn response to its Questionnaire" on or before December 21, 2009. Third Pretrial Scheduling Order, p. 5. By the Fourth Pretrial Scheduling Order issued on November 25, 2009, [Docket No. 366], this deadline was extended to January 15, 2010.

Qwest developed and submitted a draft questionnaire to plaintiffs; the parties conferred to resolve issues plaintiffs had raised with the proposed questionnaire; and for those issues they could not resolve, on November 20, 2009, they submitted their respective proposals to the Court for decision. On November 30, 2009, this Court issued an Order requiring Consent Plaintiffs to submit a completed and sworn response to the Consent Plaintiff Survey attached as Exhibit A to the Order. See November 30, 2009 [Docket No. 367]. The Consent Plaintiff Survey provided in relevant part:

> PLEASE TAKE NOTICE that the United States District Court for the District of Minnesota has required that all plaintiffs in the above-titled action complete and execute the attached questionnaire. You are receiving this questionnaire because you have submitted a Notice of Consent Filing expressing your intention to participate as a consent plaintiff in this lawsuit. Please complete the attached questionnaire, sign it, and return it in the enclosed, stamped return envelope. The deadline for all completed questionnaires to be submitted is **January 15, 2009**. ***Please take notice that failure to timely submit your sworn responses to the questionnaire, or failure to fully and completely answer each question below, may result in your claims in this lawsuit being dismissed, and you being barred from pursuing them in the future.***

Id. at p. 5 (emphasis in original).

---

not resolved, to submit to the Court a letter setting forth each side's position with respect to the outstanding issues. The parties complied with these directives.

The Court's Order also notified the Consent Plaintiffs:

> In the event that any individual on the list of active plaintiffs does not provide a timely and sworn response to the questionnaire by January 15, 2010 (suggesting that such an individual is no longer interested in pursuing his or her claim), Qwest may seek further relief from the Court at that time.

Id. at p. 3.

On January 19, 2010, at the request of Qwest, the Court issued an Order to Show Cause directed to certain Consent Plaintiffs who failed to provide a complete and sworn Consent Plaintiff Survey to Qwest as ordered by this Court. The Order to Show Cause provided in relevant part:

> **IT IS ORDERED** that each Consent Plaintiff identified on attached Exhibits A or B or C **SHOW CAUSE**, if any there be, before the Honorable Janie S. Mayeron, Magistrate Judge, at the United States District Court, Courtroom 6B, 316 North Robert Street, St. Paul, Minnesota, at 4:00 p.m., on February 1, 2010, why his/her claim should not be dismissed with prejudice for his/her failure to:
>
> (1) submit a response to the Court-Ordered Consent Plaintiff Survey; or
>
> (2) submit a sworn response to the Court-Ordered Consent Plaintiff Survey; or
>
> (3) fully and completely respond to the Court-Ordered Consent Plaintiff Survey.

January 19, 2010, Order to Show Cause at p. 2.

At issue are 37 Consent Plaintiffs who either did not submit any completed Survey, or submitted an incomplete or unsigned Survey to Qwest.

## II. STANDARD OF REVIEW

Pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, Qwest moved for dismissal of those Consent Plaintiffs who failed to provide to completed and

executed questionnaires in compliance with this Court's Orders. Rule 37(b)(2)(A) provides for the following for a party's failure to obey an order to provide discovery:

> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"To justify a sanction of dismissal, Rule 37 requires: '(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party.'" Sentis Group, Inc., Coral Group, Inc. v. Shell Oil Co, 559 F.3d 888, 899 (8th Cir. 2009) (quoting Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000) (citation omitted)).[3] The discretion of a court to issue Rule 37 sanctions "'is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just' and relate to the claim at issue in the order to provide

---

[3] At the time Schoffstall was decided, sanctions for failure to comply with a court order were reflected in Rule 37(b)(2)(C).

5

discovery.'" Hairston v. Alert Safety Light Products, Inc., 307 F.3d 717, 719 (8th Cir. 2002) (quoting Avionic Co. v. General Dynamics Corp., 957 F.2d 555, 558 (8th Cir. 1992)). However, "'the district court's discretion narrows as the severity of the sanction or remedy it elects increases.'" Sentis Group, 559 F.3d at 888 (quoting Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008). This is because the "sanction of dismissal is among the harshest of sanctions, and '[t]here is a strong policy favoring a trial on the merits and against depriving a party of his day in court.'" Id. (quoting Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 995-96 (8th Cir. 1975)). "While the sanction of dismissal is 'drastic' and should therefore be used only in exceptional cases, Allen v. Tobacco Superstore, Inc., 475 F.3d 931, 936 (8th Cir. 2007) (quoting Chrysler Corp. v. Carey, 186 F.3d 1016, 1019-20 (8th Cir. 1999)), a district court is not required to impose the least onerous sanction so long as it considers whether a lesser sanction is available or appropriate, Keefer v. Provident Life & Accident Ins. Co., 238 F.3d 937, 941 (8th Cir. 2000)." Brennan v. Qwest Communications Intern., Inc., Civil No. 07-2024 (ADM/JSM), 2009 WL 1586721 at *7 (D. Minn. June 4, 2009).[4]

---

[4] The last time Qwest sought an Order to Show Cause to dismiss certain Consent Plaintiffs that had failed to respond to discovery, this Court relied on both Rule 37 and Rule 41(b) of the Federal Rules of Civil Procedure for its recommendation of dismissal. See Brennan v. Qwest Communications Intern., Inc., 2009 WL 1586721 (Order Adopting Report and Recommendation dated January 23, 2009). However, following the Report and Recommendation, the Eighth Circuit issued the Sentis Group decision where it expressed its preference that noncompliance with discovery orders rely on Rule 37, rather than Rule 41. 559 F.3d at 899-900. Thus, this Court relies solely on Rule 37 for its analysis.

## III. JANUARY 19, 2010 ORDER TO SHOW CAUSE

### A. <u>Plaintiffs Identified in Exhibit A of the January 19, 2010 Order to Show Cause Who No Longer Want to Participate in This Action</u>

The Court finds that the following Consent Plaintiffs identified on Exhibit A to January 19, 2010 Order to Show Cause should be dismissed with prejudice:

Lorie L. Bergman
Joshua D. Binkley
William H. Eberspacher
Bruce J. Fix
Leonard K. Hammerud
Chad A. Johnson
Tim Jorgenson
Ronald H. Klatt
Charles T Leininger
David J. Leslie
John K. Linafelter
Justin M. Lorinser
Scott Lynk
Michael A. Peterson
David C. Riess
Mark M. Sandhoefner
Bonnie R. Spolarich
Wayne R. Stangler

First, these 18 plaintiffs failed to submit a response to the Court-ordered Consent Plaintiff Survey. Second, at the hearing, plaintiffs' counsel represented that these plaintiffs had told counsel over the phone that they did not want to continue in the suit. Third, plaintiffs represented that these individuals "do not contest [their] dismissal." See Plaintiffs' Memorandum in Response to Order to Show Cause ("Plaintiffs' Mem."), pp. 2-3, n. 1 and 4. Thus, they having expressed their desire to cease pursuing their claim, they should be dismissed with prejudice.[5]

---

[5] At the hearing, plaintiffs counsel confirmed that plaintiffs Binkley, Leininger, and Spolarich should be dismissed from the case. However, as to the remaining 15 plaintiffs, plaintiffs' counsel attempted to retreat from plaintiffs' written response to the

**B.  Plaintiffs Identified in Exhibit A of the January 19, 2010 Order to Show Cause Who Failed to Submit a Response to the Court-Ordered Consent Plaintiff Survey**

The Court finds that the following sixteen Consent Plaintiffs have violated this Court's Orders directing them to complete and execute the Consent Plaintiff Survey:

Paul A. DiLorenzo
Brian J. Edgell
Chad R. Hayft
Paul D. Johnson
Charles M. Karie
James R. Kremer
Erik R. Lorenz
Dennis M. Moore
Lawrence B. Munch
John J. Nelson
Joseph A. Schlosser
Kevin J. Sobczak
Jennifer R. Stevens
Jerry L. Swanson,
John A. Thibedeau,
Robbin A. Vessel

This Court also finds that the conduct of these plaintiffs was willful. Plaintiffs indicated that all of these plaintiffs were sent the Consent Plaintiff Survey, and when they failed to return it to counsel, they were contacted multiple times by counsel in writing, by phone and email. See Plaintiffs' Mem., p. 3. With the exception of plaintiffs

---

Order to Show Cause, stating that these 15 individuals should not be dismissed because they had only communicated their decision to counsel over the phone and had not yet confirmed that decision in writing. The Court rejects this "about face." Based on counsel's discussions with each of individual, counsel concluded that each person did not want to continue to participate in the suit. Confident in what they had been told, counsel then represented to both the Court and Qwest in their written submission that these plaintiffs did not contest their dismissal. Moreover, while these plaintiffs may not have put their decision in writing to plaintiffs' counsel, none of these plaintiffs have taken any action to contradict their decision – that is, as of the date of the hearing not one of them had submitted a completed and executed Survey. Finally, there are no lesser sanctions that this Court can consider against these plaintiffs, given their expression that they no longer want to be associated with this case.

Hayft, Karie, and Nelson who allegedly said they would not respond because they feared retaliation,[6] and plaintiff Edgell, who told counsel that he had a sick child but with whom counsel had no further contact, none of the other plaintiffs even responded to counsel's attempts to contact them. Id., pp. 3-4. This Court further finds that there is some prejudice to Qwest for the failure of these plaintiffs to fill out and return the Survey. Lacking a response to the Survey from these individuals has prevented Qwest from obtaining the information it needed to determine whether to depose any of them and ultimately decide, whether to call any of them at trial as witnesses.

Based on these findings, the Court concludes that sanctions are warranted. However, this Court does not find dismissal an appropriate sanction at this juncture, where up until the Consent Plaintiff Survey, these sixteen individuals had participated in this suit by filing their Consents and responding to discovery in Phase I, and lesser sanctions are available to address their conduct. Therefore, in order to address each person's refusal to provide the information sought by the Survey, each such plaintiff should be precluded from providing testimony at trial and plaintiffs should be precluded from introducing evidence on behalf of any of these sixteen individuals on any question asked in the Consent Plaintiff Survey, <u>unless</u> the individual has provided to Qwest the information sought in another form.[7] The reason for the exception to this prohibition on

---

[6] No affidavits or sworn testimony was provided to support these claims of retaliation by these three individuals. In fact, these individuals were not even identified in plaintiffs' brief – they were identified for the first time at the hearing.

[7] None of these sixteen individuals have been identified by plaintiffs as witnesses at trial. So there is no risk to Qwest that they are going to testify at the Phase II trial. In the event that the case proceeds to Stage Two of Phase II (damages phase), the Court will address at that time whether any of these sixteen plaintiffs shall be permitted to testify regarding their damages or whether plaintiffs shall be permitted to introduce damage-related evidence on behalf of any of them, in light of the responses each have already provided in response to defendants' discovery.

9

testimony or introduction of evidence at trial on any question covered in the Consent Plaintiff Survey, is that in the interrogatories and document requests previously directed to and responded by each Consent Plaintiff, it may be that that one or more of the sixteen individuals provided the information sought by a particular question in the Survey. For example, the information sought in Question 1(e)[8] – "Do you ever report less time than you worked? If yes, describe each instance?" – and Question 1(f) – seeking information regarding frequency and explanation for why the plaintiff reported less time – may have been provided in response to Interrogatory Nos. 6-8 and Document Request Nos. 10. Similarly, the information sought by Question 19 bearing on damages may have been provided by the responses of one or more of the 16 plaintiffs to Interrogatory No. 11 and Document Request No. 32. Thus, it may be that Qwest has already obtained some of the information sought by the Consent Plaintiff Survey from one or more of these individuals, and if so, any such individual should not be prevented from testifying or providing evidence about it at trial.

On the issue of prejudice, the Court recognizes Qwest sought the use of the Consent Plaintiff Survey so that it could determine who to call at trial. See November 30, 2009 Order, p. 3. However that interest must be weighed against the rights of these Consent Plaintiffs to have their day in court, taking into account that out

---

[8] The Court notes that Questions 1 and 2 in the Survey was numbered incorrectly by the Court on the Consent Survey attached as Exhibit A to the November 30, 2009 Order. When the parties could not agree on the contents of the Survey, the Court decided the final contents of the Survey. See November 30, 2009 Order. One of the decisions made was to delete Qwest's proposed Question 1; accordingly, Qwest's Question 2 became Question 1. Unfortunately, the Court failed to catch the change in Question 1(f), which should have read "If you answered Question 1e above "NO," proceed to Question 2 below. If you answered Question 1e above "YES," answer the questions before proceeding to Question 2." The Court apologizes for any confusion this error may have caused to the parties.

of the 197 remaining Consent Plaintiffs, 166 plaintiffs did answer the Survey (see Declaration of Reena I. Desai, ¶ 3); all Consent Plaintiffs including the sixteen at issue here, responded to Qwest's Interrogatories and Document Requests;[9] Qwest has already deposed thirty-five Consent Plaintiffs in Phase I; and Qwest has the right to depose 40 additional Consent Plaintiffs in connection with Phase II, including those identified as trial witnesses by plaintiffs. See Third and Fourth Pretrial Scheduling Orders. Based on all of these factors, the Court concludes that Qwest is armed with adequate information to decide who to call as witnesses at Phase II, and that the prejudice it has suffered by the failure of these sixteen to answer the Survey is not sufficient to warrant dismissal of their claims.[10]

---

[9] The Court recognizes that not all Consent Plaintiffs produced documents. See February 20, 2010 email from Ryan Mick's email to the Court. In this email, Qwest's counsel represented that only twenty Consent Plaintiffs produced documents, and of those at issue, none produced documents. However, that only suggests that the balance of the plaintiffs did not have documents to produce; it does not lead to the conclusion that they were not engaged in the litigation process.

[10] To the extent that in their response to the Order to Show Cause plaintiffs challenged the use of the Survey, the contents of the Survey, or that the Survey exceeded the number of interrogatories permitted by the Pretrial Scheduling Orders issued in Phase I, that train has already left the station. First, the limit on the number of interrogatories was directed to Phase I discovery, and the Pretrial Scheduling Orders from Phase I clearly contemplated additional discovery following a decision on class certification. Second, following the Order granting certification, and as required by the Phase I scheduling orders, the parties submitted to this Court their respective proposals for Phase II. In their submission, plaintiffs objected to the use of questionnaires, but the Court determined that the survey was an appropriate vehicle for written discovery, included it in the Third Amended Pretrial Scheduling Order, and put in place the process for finalizing its contents. See Third and Fourth Amended Pretrial Scheduling Order [Docket Nos. 362, 366]. Plaintiffs did not appeal that decision. Third, when the parties could not agree on the contents of the survey, they each submitted to the Court their respective proposed surveys with letters explaining their positions on areas of dispute. What was not in dispute was Question 1 (then Question 2), which plaintiffs' counsel argued at the hearing invited retaliation by Qwest. But the time to object to that question was in connection with their letters to the Court, and plaintiffs did not object to that question. Again, plaintiffs did not appeal the November 30, 2009 Order on the

11

### C. Brenda Selby Identified in Exhibit B of the January 19, 2010 Order to Show Cause

Brenda Selby responded to the Consent Plaintiff Survey, but as of the date of the hearing, the executed signature page had not been provided to Qwest. Given Selby completed the Survey and Qwest has the information it needs to evaluate her as a potential trial witness, sanctions are not warranted. If Selby does not provide the signed Survey by her deposition, it can be presented to her at the deposition for her signature or attestation.

### D. Sean Herman and Paul Oberholtzer Who Were Identified on Exhibit C of the January 19, 2010 Order

The only plaintiffs at issue on Exhibit C of the January 19, 2010 Order are Sean Herman and Paul Oberholtzer, who provided partial answers to the Consent Plaintiff Survey. Specifically, Oberholtzer did not answer Question 19 regarding damages. Herman did not answer Question 12 and 13. He instead stated "N/A" – i.e. not applicable. Like Selby, sanctions against Herman and Oberholtzer are not warranted. However, to insure that Qwest obtains the information requested by these Surveys, Question 19 can be explored with Oberholtzer at his deposition and Oberholtzer shall be prepared to answer the question at his deposition, and Herman shall respond to Questions 12 and 13 on or before **February 24, 2010**.

---

survey. Finally, the Court explicitly addressed the issue of retaliation in the Order. See November 30, 2009 Order, p. 3 ("counsel is free to advise each plaintiff regarding issues or concerns counsel may have regarding any potential for retaliation and discipline by Qwest for filling out the questionnaire."). The Court has no reason to believe that plaintiffs' counsel would not have addressed the issue of retaliation with every Consent Plaintiff.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1. The claims of the following plaintiffs be **DISMISSED** with prejudice:

    Lorie L. Bergman
    Joshua D. Binkley
    William H. Eberspacher
    Bruce J. Fix
    Leonard K. Hammerud
    Chad A. Johnson
    Tim Jorgenson
    Ronald H. Klatt
    Charles T. Leininger
    David J. Leslie
    John K. Linafelter
    Justin M. Lorinser
    Scott Lynk
    Michael A. Peterson
    David C. Riess
    Mark M. Sandhoefner
    Bonnie R. Spolarich
    Wayne R. Stangler

2. As a sanction for their failure to respond to the Consent Plaintiff Survey, the following plaintiffs shall be precluded from providing testimony at trial and plaintiffs shall be precluded from introducing evidence on behalf of any of these 16 individuals on any question asked in the Consent Plaintiff Survey, unless the individual has provided to Qwest the information sought in another form:

    Paul A. DiLorenzo
    Brian J. Edgell
    Chad R. Hayft
    Paul D. Johnson
    Charles M. Karie
    James R. Kremer
    Erik R. Lorenz
    Dennis M. Moore
    Lawrence B. Munch
    John J. Nelson

        Joseph A. Schlosser
        Kevin J. Sobczak
        Jennifer R. Stevens
        Jerry L. Swanson,
        John A. Thibedeau,
        Robbin A. Vessel

3. Brenda Selby shall provide to Qwest the executed signature page of her Consent Plaintiff Survey prior to her deposition or shall sign or attest to the Survey at her deposition.

4. Paul Oberholtzer shall be prepared to answer and shall answer Question 19 of the Consent Plaintiff Survey at his deposition.

5. Sean Herman shall provide complete responses to Questions 12 and 13 of the Consent Plaintiff Survey on or before **February 24, 2010**.


Dated: February 10, 2010

        *s/ Janie S. Mayeron*
        JANIE S. MAYERON
        United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 24, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **February 24, 2010**.