

the **Voice** for employees®

Nichols Kaster, PLLP
Attorneys at Law

Minneapolis • San Francisco

February 23, 2010

**VIA EMAIL & U.S. MAIL**

Ryan Mick
Dorsey & Whitney LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402

Re: **Brennan, et al. v. Qwest Communications Int'l, et al.**

Dear Ryan:

I am writing in response to your letters of February 18, 19 and 22, 2010.

With respect to Plaintiffs' demands for entry upon Qwest premises, we agree to the following terms proposed in your letter of February 18:

1. That all on-site visitors will sign an agreed-upon confidentiality agreement and release which will be provided to Qwest's counsel prior to the on-site inspection.

2. Plaintiffs will not videotape the restroom and/or locker room areas.

3. Plaintiffs agree not to videotape or photograph any Qwest employee who wishes not to be videotaped or photographed.

4. Plaintiffs agree not to videotape defense counsel and/or Qwest escorts during the on-site visits.

5. Plaintiffs will produce copies of any video footage and/or still photographs to defense counsel as soon as practical following each inspection.

With respect to the terms that we do not agree to:

1. Given the short time-line for the inspections, Plaintiffs will agree to identify the person(s) who will be present at the Qwest facilities three days prior to the inspection date(s). Similarly, Plaintiffs will agree to identify the camera(s) (to the extent known) to be used during the inspection three days prior to the inspection date(s).

2. Plaintiffs believe that is it relevant to the case at hand to be present at 7:30 a.m. as noticed in the on-site inspection notices. As you are aware, a significant portion of Plaintiffs' claims involve pre-shift and start-of-shift activities. As such, it is entirely reasonable and appropriate to begin the on-site inspections at 7:30 a.m. as Qwest employees are beginning their work day. Plaintiffs will agree not to engage on-the-clock Qwest employees in conversation or impede their work in any way during the on-site inspections. Also, as stated above in point three, Plaintiffs will agree not to videotape or photograph any Qwest employee(s) who so wishes.

   Although Plaintiffs do not believe that each of the on-site inspections will last much more than one hour, we cannot agree to the artificial time stipulation proposed by Defendants.

3. Plaintiffs request that up to three persons be allowed to be present during the on-site inspections. Plaintiffs will identify each person that will be present three days prior to the on-site inspection date.

4. In regard to the Qwest's position that Plaintiffs are not allowed in any part of its facilities without an escort by Qwest personnel, while Plaintiffs understand Qwest's concern regarding the videotaping and photographing of the premises without an escort, Plaintiffs request that any individual in the inspection group be allowed to use the restroom, if necessary, without an escort.

5. Plaintiffs will not agree to the stipulation that they not be allowed to speak to any Qwest employees to seek or solicit any information in any manner. As you are aware, we have an attorney-client relationship with numerous Qwest employees and are well within our rights to speak to those individuals.

6. Plaintiffs do not agree with Qwest's proposal that bulletin boards and other postings not be videotaped or photographed.

Also, as previously discussed, the March 4 inspection date will need to be rescheduled. Please let me know if March 3 at 7:30 a.m. would be available for the on-site inspection of the Eden Prairie location.

In response to your letter of February 22, 2010, Plaintiffs look forward to receiving unredacted copies of Defendants' previously redacted documents by February 25, 2010. As stated in your letter, Defendants will also produce a privilege log for the remaining redactions, if necessary.

It is also my understanding that Defendants will produce the WFA "remarks" from January 1, 2005 to the present. Please let me know when I should expect to receive these documents.

Regarding your proposal with respect to supplementation of the WFA, GPS, and payroll data, we will agree to work from the data up to January 31, 2010, however, we do not

intend to give up our right to discoverable information. We will not expect Qwest to supplement such information once it becomes available, and we do not expect to request supplementation for this data for the time period after January 31, 2010. Nevertheless, if Plaintiffs deem it necessary to request supplemental WFA, GPS, and payroll data after January 31, 2010, we are reserving our right to do so.

Finally, Plaintiffs request Dotlog Job History Reports, SAT Reports and documents named "Coaching Summary."

> <u>Dotlog Job History reports</u> – Plaintiffs believe these reports contain critical information that has not been produced to Plaintiffs in another format. We request the production of these documents to the extent they have been emailed, accessed, or are readily available through the relevant database.
>
> <u>SAT reports</u> - As you indicated in your February 19th letter, Qwest has produced SAT reports only to the extent it was printed and placed in Plaintiffs' personnel files. It is unclear, however, whether these reports are available from some other source, for example, as email attachments, or the availability of retrieval to the extent they have been access through the computer system. We request the production of these documents to the extent they have been emailed, accessed, or are readily available through the relevant database.
>
> <u>"Coaching Summary" documents</u> – These documents are specifically referred to as "Coaching Summary" on the face of the document. We request the production of these documents to the extent they have been emailed, accessed, or are readily available through the relevant database.

I look forward to speaking with you at 4:30 p.m. this afternoon. It is my hope we can resolve these differences without involving the Court.

Sincerely,

NICHOLS KASTER, PLLP

James H. Kaster

JHK/kjg