March 2, 2010

**VIA ECF**

Honorable Janie S. Mayeron
United States District Court
632 Federal Building
316 N. Robert Street
St. Paul, MN 55101

      Re:    Brennan et al. v. Qwest Communications Int'l., et al.
              Court File No: 07-cv-02024 ADM/JSM

Dear Judge Mayeron:

There are two outstanding discovery issues that the parties have been unable to resolve. The first concerns Plaintiffs' request to inspect Qwest's premises. The second relates to Defendant's refusal to fully supplement outstanding discovery responses. We will be prepared to discuss both issues in more detail at the telephone conference on March 10, 2010.

**Rule 34 Inspection**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, and in preparation for trial, on February 11 and 16, 2010, Plaintiffs served Qwest with Demands for Entry upon Land and Property for Inspection.[1] Plaintiffs wanted an opportunity to inspect, photograph and videotape Defendant's facilities and all areas regularly accessed by Plaintiffs.

In a letter dated February 18, 2010[2], Qwest responded to Plaintiffs' request stating several objections, and outlined numerous conditions to which Plaintiffs must agree before Qwest would permit Plaintiffs to enter its premises.

On February 23, 2010[3], Plaintiffs responded to Qwest's list of objections and conditions, agreeing to some terms in whole, other terms in part, and refusing to agree to several of Qwest's proposed terms. With respect to Plaintiffs' requests for entry, Plaintiffs agreed to the following terms as proposed in Qwest's letter dated February 18, 2010:

---

[1] Attached hereto as Exhibit 1.
[2] Attached hereto as Exhibit 2.
[3] Attached hereto as Exhibit 3.

1. All on-site visitors will sign an agreed-upon confidentiality agreement and release which will be provided to Qwest's counsel prior to the on-site inspection.

2. Plaintiffs will not videotape the restroom and/or locker room areas.

3. Plaintiffs will not videotape or photograph any Qwest employee who wishes not to be videotaped or photographed.

4. Plaintiffs agree not to videotape defense counsel and/or Qwest escorts during the on-site visits.

5. Plaintiffs will produce copies of any video footage and/or still photographs to defense counsel as soon as practical following each inspection.

There were many other conditions set forth in Qwest's February 18, 2010 letter to which Plaintiffs would not agree.[4] As a consequence, on February 23, 2010, the parties spoke in an effort to reach some compromise on Plaintiffs' requests for inspection. The parties were not, however, able to resolve the outstanding issues. Indeed, it was clear from the onset of the call that Qwest generally objected to the inspections in their entirety and was unwilling to waver on all of the preconditions to inspection as set forth in its February 18, 2010 letter.

As the Court is well aware, a party is entitled under Rule 34(a)(2) to demand inspection of premises. Inspection is permitted and anticipated by Rule 34, which is as broad in scope as any other available method of discovery. Cuno, Inc. v. Pall Corp., 116 F.R.D. 279, 281 (E.D.N.Y. 1987). The scope of permissible discovery under Rule 34 is governed by Rule 26, which authorizes a party to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26, 34; see also Minn. Mining & Mfg. Co., Inc. v. Nippon Carbide Indus. Co., Inc., 171 F.R.D. 246, 248 (D. Minn. 1997). To be discoverable, "the information sought need not be admissible at the trial if the information sought appears reasonably calculated to the discovery of admissible evidence." Id. A party seeking inspection under Rule 34 need only prove relevance of the information sought, not necessity. Cuno, 116 F.R.D. at 281.

While a party responding to the discovery request may object to a Rule 34 inspection, the Court must balance the parties' conflicting interests. Minn. Mining, 171 F.R.D. at 248. However,

> The mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought does not of itself require denial of the motion. Rule 26(c) speaks of "undue burden or

---

[4] Such conditions, and Plaintiffs' position on the imposition of those conditions, are discussed on pages 4-5 of this letter.

2

> expense" and discovery has normally been allowed unless the hardship is unreasonable in light of the benefits to be secured from the discovery.

8B C. Wright, & A. Miller, Fed. Prac. & Proc. Civ., § 2214 (2d ed. 1994).

In Minnesota Mining, the court granted under Rule 34 the plaintiff's motion to compel the inspection of defendant's facilities. 171 F.R.D. at 251. In doing so, the court recognized that any plant inspection would create potential disruption, but stated that such distraction could be minimized through advance preparation. Moreover, any remaining prospect for disruption was outweighed by the efficiencies and effectiveness of a plant inspection in ferreting out the central issues of the dispute. See id. (citing Snowden By and Through Victor v. Connaught Lab., 137 F.R.D. 325, 332-33 (D. Kan. 1991) ("The mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought does not of itself require denial of the motion.").

Additionally, the fact that Plaintiffs may testify regarding their own activities does not merit limiting discovery. Fed. Prac. & Proc. Civ., § 2214 ("[T]he fact that the moving party already knows the facts it seeks to obtain by inspection has long been recognized not to be a sufficient reason for denying discovery.").

Plaintiffs' Rule 34 demands for entry and inspection are neither unreasonable nor unduly burdensome. Plaintiffs' requested inspections are most certainly relevant to the issues central to this dispute, namely Plaintiffs pre-shift, start-of-shift and post-shift activities. Plaintiffs contend that their supervisors knew or should have known that Plaintiffs were working off-the-clock. One way Plaintiffs will prove this claim is through direct observation by supervisors of Plaintiffs working before and after their shifts. Plaintiffs' request, in part, is designed to fully understand the physical make-up of the garage (where many Plaintiffs arrived to and departed from each workday). This will provide the Court and trier of fact context when evaluating Plaintiffs' claims that supervisors often observed Plaintiffs working at the garage or in the work areas adjacent to the garage before or after the start of their shifts. Plaintiffs also intend to videotape Plaintiffs' computer screens at the garages. This will allow the Court and trier of fact to better understand Plaintiffs' routes for each day as well as Qwest's expectations with regard to job performance for that day.

Because Qwest can make no compelling arguments to preclude an inspection at all this Court should direct Qwest allow Plaintiffs to proceed with their inspections.

As discussed above, in Qwest's February 18 letter, Qwest proposed numerous additional terms that Plaintiffs find unacceptable, given the broad scope of discovery as allowed under Rules 26 and 34. Assuming the Court will allow inspections, the following issues are still in dispute:

3

1. Scope of Inspections

**Qwest's proposed terms**: Plaintiffs may videotape and photograph the physical facilities in Qwest's garages, but may not videotape Qwest employees working within the facilities. Such videotaping is unnecessary because Plaintiffs are able testify regarding their own activities. Additionally, such videotaping will be disruptive to Qwest's operations.

**Plaintiffs' response**: A significant portion of Plaintiffs' claims involve pre-shift and start-of-shift activities. As such, it is necessary and entirely reasonable to videotape Qwest employees within the facilities they are beginning their work day. Plaintiffs have agreed not to videotape or photograph any Qwest employee who wishes not to be videotaped or photographed, and Plaintiffs will agree not to engage on-the-clock Qwest employees in conversation or impede their work in any way during the on-site inspections.

2. Time of Inspections

**Qwest's proposed terms**: Plaintiffs may not conduct their inspection at their requested time of 7:30 a.m. Plaintiffs must conduct any inspections between 11:00 a.m. and 3:00 p.m., because an inspection at any other time would be too disruptive to Qwest's operations.

**Plaintiffs' response**: Plaintiffs do not agree to limit their inspections to the hours between 11:00 a.m. and 3:00 p.m., and believe that it is necessary for this inspection to be worth while to be present at 7:30 a.m. as noticed in the on-site inspection notices. Plaintiffs will agree not to engage on-the-clock Qwest employees in conversation or impede their work in any way during the on-site inspections.

3. Number and Identification of Persons to be Present at Inspections

**Qwest's proposed terms**: Qwest will permit up to two persons to be present at Qwest facilities for any inspection. Plaintiffs must identify at least seven days prior to any inspection the persons who will be present.

**Plaintiffs' response**: Plaintiffs request that up to three persons be allowed to be present during the on-site inspections. Given the short time-line for the inspections, Plaintiffs agree to identify three days prior to the inspection date(s) the person(s) who will be present.

4. Number and Identification of Cameras to be Used at Inspections

**Qwest's proposed terms**: Qwest will permit the use of no more than one video camera and one still camera at each inspection. Plaintiffs must identify at least seven days prior to any inspection the type of cameras, if any, they intend to use during the inspection.

4

**Plaintiffs' response**: Plaintiffs agree to identify three days prior to the inspection date(s) the camera(s) intended to be used, to the extent known.

5.   Duration of Inspections

**Qwest's proposed terms**: Qwest will only permit Plaintiffs to be present in each of its facilities for up to one hour.

**Plaintiffs' response**: Although Plaintiffs do not believe that each of the on-site inspections will last much more than one hour, Plaintiffs do not agree to the artificial time stipulation proposed by Defendants.

6.   Escorts by Qwest Personnel

**Qwest's proposed terms**: Qwest will not permit persons participating in the inspection to be present in any party of its facilities without escort by Qwest personnel.

**Plaintiffs' response**: Plaintiffs understand Qwest's concern regarding the videotaping and photographing of the premises without an escort. Plaintiffs request, however, that any individual in the inspection group be allowed to use the restroom, if necessary, without an escort.

7.   Communication with Qwest Employees

**Qwest's proposed terms**: No person participating in the inspection shall speak to Qwest employees or seek to solicit any information from employees in any manner.

**Plaintiffs' response**: Plaintiffs do not agree to the stipulation that they not be allowed to speak to any Qwest employees to seek or solicit any information in any manner. Plaintiffs' counsel has an attorney-client relationship with numerous Qwest employees and is well within its right to speak with those individuals.

8.   Photographing Qwest Materials

**Qwest's proposed terms**: Photographing or videotaping of Qwest's bulletin boards and other postings will not be permitted.

**Plaintiffs' response**: Plaintiffs do not agree to Qwest's proposal that bulletin boards and other postings not be videotaped or photographed.

**Supplemental Document Requests**

This dispute concerns the production of reports utilized by Plaintiffs' supervisors called "Supervisor Analysis Tool", "Dotlog Job History" and "Coaching Summaries" ("Reports"). During the first round of discovery, Plaintiffs requested the Reports from Qwest, which claimed they were "ad hoc" reports, not electronic data, and not in databases at all. In short, Qwest claimed there was no way to retrieve the Reports. Only

5

the Reports that were printed and placed in Plaintiffs' personnel files were produced in connection with the production of Plaintiffs' personnel files.

Believing the Reports have real value to this case, Plaintiffs again requested the Reports on February 11, 2010.[5] In response on February 19, 2010, Qwest used the same excuse it used the first time—that there is no central repository for the Reports, and to the extent a supervisor used the data for a particular technician, that supervisor may or may not have printed the report and placed in the technician's personnel file[6]. Again, Qwest only produced the Reports if a supervisor printed it and placed it in a Plaintiff's personnel file.

In an effort to resolve the issue, Plaintiffs again requested the Reports on February 23, 2010, specifically requesting the Reports to the extent they have been emailed, accessed, or are otherwise readily available. Qwest responded on March 1, 2010, that there is no way to pull the Reports just because they have been "accessed" and that they are not readily available.[7] Qwest conceded it has the ability to search for the Reports to the extent they may have been attached to e-mails. Claiming it would be a burdensome process to access such e-mails and to run keyword searches for all opt-in Plaintiffs, however, Qwest offered to only produce the Reports to the extent they have been emailed for the 19 "representative plaintiffs."

Qwest's proposal is simply unacceptable. The Reports are highly relevant to this case as they may demonstrate that Qwest knew or should have known Plaintiffs were working off-the-clock. If Qwest can conduct a search for the 19 representative Plaintiffs, it can do so for the remaining opt-in Plaintiffs as well. Indeed, discovery has not been limited in any sense to the representative Plaintiffs, and there is no valid reason to do so now. Plaintiffs respectfully request that the Court compel Qwest to produce the Reports to the extent they have been emailed for each active Plaintiff.

                                              Very Truly Yours,

                                              s/Matthew H. Morgan

                                              Matthew H. Morgan

Enc.
Cc:    Robert Reinhart
        Melissa Raphan
        Ryan Mick
        T. J. Conley

---

[5] Attached hereto as Exhibit 4.
[6] Attached hereto as Exhibit 5.
[7] Attached hereto as Exhibit 6.