UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lyle Brennan, Christopher Richard, and Michael Lundell, on behalf of themselves and other individuals similarly situated,

    Plaintiffs,

v.

Qwest Communications International, Inc., Qwest Communications Corporation, and Qwest Corporation, foreign corporations,

    Defendants.

Civil File No. 07-cv-02024 ADM/JSM

**PLAINTIFFS' AMENDED DEMAND FOR ENTRY UPON LAND AND PROPERTY FOR INSPECTION**

TO: Defendants and their attorneys of record.

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs demand entry upon the premises of Qwest Communications International, Inc., Qwest Communications Corporation, and Qwest Corporation at 91 11th Avenue Southwest, Forest Lake, MN 55025 for the purpose of inspection, measuring, surveying, photographing and videotaping the parking lot, entrances, exits, hallways, locker rooms, time-clocks, lunch-room, break-room, rest-room, vehicle storage/garage area, vehicle preparation area, product storage/stock areas, and all areas regularly accessed by non-exempt workers on **March 11, 2010** at **7:30 a.m.**



Dated: 2/16/10

**NICHOLS KASTER, PLLP**

_____
James H. Kaster #53946
kaster@nka.com
Matthew H. Morgan #304657
mmorgan@nka.com
Reena I. Desai #0388311
rdesai@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone (612) 256-3200
Fax (612) 338-4878

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lyle Brennan, Christopher Richard, and Michael Lundell, on behalf of themselves and other individuals similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Qwest Communications International, Inc., Qwest Communications Corporation, and Qwest Corporation, foreign corporations,<br><br>Defendants. | Civil File No. 07-cv-02024 ADM/JSM<br><br>**PLAINTIFFS' DEMAND FOR ENTRY UPON LAND AND PROPERTY FOR INSPECTION** |

**TO:** Defendants and their attorneys of record.

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs demand entry upon the premises of Qwest Communications International, Inc., Qwest Communications Corporation, and Qwest Corporation at 265 Lothenbach Avenue, West St. Paul, MN 55118 for the purpose of inspection, measuring, surveying, photographing and videotaping the parking lot, entrances, exits, hallways, locker rooms, time-clocks, lunch-room, break-room, rest-room, vehicle storage/garage area, vehicle preparation area, product storage/stock areas, and all areas regularly accessed by non-exempt workers on **March 9, 2010 at 7:30 a.m.**

1

Dated: Feb 18, 18

**NICHOLS KASTER, PLLP**

_[signature]_

James H. Kaster #53946
kaster@nka.com
Matthew H. Morgan #304657
mmorgan@nka.com
Reena I. Desai #0388311
rdesai@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone (612) 256-3200
Fax (612) 338-4878

ATTORNEYS FOR PLAINTIFFS

2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lyle Brennan, Christopher Richard, and Michael Lundell, on behalf of themselves and other individuals similarly situated, | Civil File No. 07-cv-02024 ADM/JSM |
| Plaintiffs, | **PLAINTIFFS' DEMAND FOR ENTRY UPON LAND AND PROPERTY FOR INSPECTION** |
| v. | |
| Qwest Communications International, Inc., Qwest Communications Corporation, and Qwest Corporation, foreign corporations, | |
| Defendants. | |

**TO:** Defendants and their attorneys of record.

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs demand entry upon the premises of Qwest Communications International, Inc., Qwest Communications Corporation, and Qwest Corporation at 6250 Bury Avenue, Eden Prairie, MN 55372 for the purpose of inspection, measuring, surveying, photographing and videotaping the parking lot, entrances, exits, hallways, locker rooms, time-clocks, lunch-room, break-room, rest-room, vehicle storage/garage area, vehicle preparation area, product storage/stock areas, and all areas regularly accessed by non-exempt workers on **March 4, 2010 at 7:30 a.m.**

Dated: Feb 11, 10

NICHOLS KASTER, PLLP

James H. Kaster #53946
    kaster@nka.com
Matthew H. Morgan #304657
    mmorgan@nka.com
Reena I. Desai #0388311
    rdesai@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone (612) 256-3200
Fax (612) 338-4878

ATTORNEYS FOR PLAINTIFFS



RYAN E. MICK
(612) 492-6613
FAX (612) 340-2868
mick.ryan@dorsey.com

February 18, 2010

**VIA E-MAIL AND U.S. MAIL**

James Kaster, Esq.
Matthew Morgan, Esq.
Reena Desai, Esq.
Nichols Kaster, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402

   Re:   *Brennan et al. v. Qwest Communications Int'l, et al.*
         Court File No. 07-cv-02024 (ADM/JSM)

Counsel:

   We are in receipt of Plaintiffs' demands for entry upon Qwest's premises. I write to address several issues that must be resolved before Qwest will permit Plaintiffs to enter its premises.

   1.    We are trying to confirm whether the noticed dates[1] will work for the inspections. We will let you know as soon as we can confirm those dates. The times noted for Plaintiffs' inspections are problematic, however. To the extent that Plaintiffs are entitled to inspect Qwest's premises, we believe it is reasonable and appropriate for such inspections to take place at times that will not disrupt Qwest's operations. Specifically, while we understand that Plaintiffs intend to videotape Qwest employees engaged in start-of-shift activities at each garage, it is Qwest's position that Plaintiffs are not entitled to videotape those activities. Qwest has no objection to Plaintiffs photographing or videotaping the physical facilities in each garage at a less disruptive time, but videotaping employees in these garages is unnecessary, since Plaintiffs are able to testify regarding their own start-of-shift activities, and having outsiders in the facilities, with cameras, at the times identified in your notices is likely to be disruptive to Qwest's ability to meet time-sensitive customer commitments, as well as to Qwest employees who are not parties to this lawsuit.[2]

---

[1] We understand that the inspection previously scheduled for March 4 has been cancelled. Please advise as soon as possible if you would like to reschedule that inspection for an alternate date.

[2] Please be advised that Qwest intends to notify the CWA that Plaintiffs have demanded entry to these garages to inspect, photograph and/or videotape the premises. In the event that the CWA, or individual union employees, object to these inspections and/or being videotaped or photographed, any such objections will have to be resolved before Qwest will permit Plaintiffs entry to the requested garages.

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • T 612.340.2600 • F
SUITE 1500 • 50 SOUTH SIXTH STREET • MINNEAPOLIS, MINNESOTA
USA   CANADA   EUROPE

EXHIBIT 2



James Kaster, Esq.
Matthew Morgan, Esq.
Reena Desai, Esq.
February 18, 2010
Page 2

In light of Qwest's schedules of operations at the garages noticed by Plaintiffs, the requested inspections generally may be conducted between 11:00 a.m. and 3:00 pm with much less disruption. Please let us know when you would prefer to start the inspections at each facility within the range of times identified above.

2. Before Qwest will permit inspection of its premises, all visitors must sign a confidentiality agreement and release. I will forward a form in advance of each inspection. Please return signed forms to my attention no later than the day before each inspection.

3. At least 7 days prior to any inspection, Plaintiffs must identify the persons who will be present in Qwest's facilities. Qwest will permit up to 2 persons to be present. Persons not identified by Plaintiffs sufficiently in advance will not be permitted to enter Qwest's facilities.

4. At least 7 days prior to any inspection, Plaintiffs must also identify the starting time (see supra) and ending time for each inspection. Given the nature of Plaintiffs' demand, Qwest will permit Plaintiffs to be present in each of its facilities for up to 1 hour.

5. At least 7 days prior to any inspection, Plaintiffs must also identify the type of cameras, if any, they intend to use during the inspection. Qwest will permit no more than one video camera and one still camera at each inspection.

6. Cameras will not be permitted in restrooms or other sensitive areas, such as locker rooms (if any). Violation of this condition will result in the immediate termination of the inspection.

7. Qwest will not permit persons participating in the inspection to be present in any part of its facilities without escort by Qwest personnel. Violation of this condition will result in the immediate termination of the inspection.

8. If Plaintiffs intend to take photographs or record video footage as part of their inspection, no photographs or video footage shall be taken of any Qwest employee who asks not to be videotaped. Violation of this condition will result in the immediate termination of the inspection.

9. No person participating in the inspection shall speak to Qwest employees or seek to solicit any information from employees in any manner. Violation of this condition will result in the immediate termination of the time study.

10. Defense counsel and Qwest escorts shall not be videotaped or photographed.

11. Photographing or videotaping of Qwest's bulletin boards and other postings will not be permitted.



James Kaster, Esq.
Matthew Morgan, Esq.
Reena Desai, Esq.
February 18, 2010
Page 3

    12.    Plaintiffs shall produce copies of any video footage or still photographs to Qwest within 5 days of the conclusion of each inspection.

Please let me know as soon as possible whether Plaintiffs will agree to the conditions set forth herein.

Very truly yours,

Ryan E. Mick

REM/jkt
cc:    Robert Reinhart, Esq.
        Melissa Raphan, Esq.



the **Voice** for employees®

**Nichols Kaster, PLLP**
Attorneys at Law

Minneapolis • San Francisco

February 23, 2010

**VIA EMAIL & U.S. MAIL**

Ryan Mick
Dorsey & Whitney LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402

    Re:    **Brennan, et al. v. Qwest Communications Int'l, et al.**

Dear Ryan:

I am writing in response to your letters of February 18, 19 and 22, 2010.

With respect to Plaintiffs' demands for entry upon Qwest premises, we agree to the following terms proposed in your letter of February 18:

1. That all on-site visitors will sign an agreed-upon confidentiality agreement and release which will be provided to Qwest's counsel prior to the on-site inspection.

2. Plaintiffs will not videotape the restroom and/or locker room areas.

3. Plaintiffs agree not to videotape or photograph any Qwest employee who wishes not to be videotaped or photographed.

4. Plaintiffs agree not to videotape defense counsel and/or Qwest escorts during the on-site visits.

5. Plaintiffs will produce copies of any video footage and/or still photographs to defense counsel as soon as practical following each inspection.

With respect to the terms that we do not agree to:

1. Given the short time-line for the inspections, Plaintiffs will agree to identify the person(s) who will be present at the Qwest facilities three days prior to the inspection date(s). Similarly, Plaintiffs will agree to identify the camera(s) (to the extent known) to be used during the inspection three days prior to the inspection date(s).

4600 IDS Center, 80 South 8th Street, Minneapolis, MN 55402 • Telephone (612) 256-3200 • Facsimile (612)
Direct Dial (612) 256-3202 • Email kaster@nka.com • Web www.nka.com

**EXHIBIT 3**

2. Plaintiffs believe that is it relevant to the case at hand to be present at 7:30 a.m. as noticed in the on-site inspection notices. As you are aware, a significant portion of Plaintiffs' claims involve pre-shift and start-of-shift activities. As such, it is entirely reasonable and appropriate to begin the on-site inspections at 7:30 a.m. as Qwest employees are beginning their work day. Plaintiffs will agree not to engage on-the-clock Qwest employees in conversation or impede their work in any way during the on-site inspections. Also, as stated above in point three, Plaintiffs will agree not to videotape or photograph any Qwest employee(s) who so wishes.

Although Plaintiffs do not believe that each of the on-site inspections will last much more than one hour, we cannot agree to the artificial time stipulation proposed by Defendants.

3. Plaintiffs request that up to three persons be allowed to be present during the on-site inspections. Plaintiffs will identify each person that will be present three days prior to the on-site inspection date.

4. In regard to the Qwest's position that Plaintiffs are not allowed in any part of its facilities without an escort by Qwest personnel, while Plaintiffs understand Qwest's concern regarding the videotaping and photographing of the premises without an escort, Plaintiffs request that any individual in the inspection group be allowed to use the restroom, if necessary, without an escort.

5. Plaintiffs will not agree to the stipulation that they not be allowed to speak to any Qwest employees to seek or solicit any information in any manner. As you are aware, we have an attorney-client relationship with numerous Qwest employees and are well within our rights to speak to those individuals.

6. Plaintiffs do not agree with Qwest's proposal that bulletin boards and other postings not be videotaped or photographed.

Also, as previously discussed, the March 4 inspection date will need to be rescheduled. Please let me know if March 3 at 7:30 a.m. would be available for the on-site inspection of the Eden Prairie location.

In response to your letter of February 22, 2010, Plaintiffs look forward to receiving unredacted copies of Defendants' previously redacted documents by February 25, 2010. As stated in your letter, Defendants will also produce a privilege log for the remaining redactions, if necessary.

It is also my understanding that Defendants will produce the WFA "remarks" from January 1, 2005 to the present. Please let me know when I should expect to receive these documents.

Regarding your proposal with respect to supplementation of the WFA, GPS, and payroll data, we will agree to work from the data up to January 31, 2010, however, we do not

intend to give up our right to discoverable information. We will not expect Qwest to supplement such information once it becomes available, and we do not expect to request supplementation for this data for the time period after January 31, 2010. Nevertheless, if Plaintiffs deem it necessary to request supplemental WFA, GPS, and payroll data after January 31, 2010, we are reserving our right to do so.

Finally, Plaintiffs request Dotlog Job History Reports, SAT Reports and documents named "Coaching Summary."

> Dotlog Job History reports – Plaintiffs believe these reports contain critical information that has not been produced to Plaintiffs in another format. We request the production of these documents to the extent they have been emailed, accessed, or are readily available through the relevant database.
>
> SAT reports - As you indicated in your February 19th letter, Qwest has produced SAT reports only to the extent it was printed and placed in Plaintiffs' personnel files. It is unclear, however, whether these reports are available from some other source, for example, as email attachments, or the availability of retrieval to the extent they have been access through the computer system. We request the production of these documents to the extent they have been emailed, accessed, or are readily available through the relevant database.
>
> "Coaching Summary" documents – These documents are specifically referred to as "Coaching Summary" on the face of the document. We request the production of these documents to the extent they have been emailed, accessed, or are readily available through the relevant database.

I look forward to speaking with you at 4:30 p.m. this afternoon. It is my hope we can resolve these differences without involving the Court.

                    Sincerely,

                    NICHOLS KASTER, PLLP

                    James H. Kaster

JHK/kjg



the **Voice** for employees®
Nichols Kaster PLLP
Attorneys at Law
Minneapolis • San Francisco

February 11, 2010

**VIA EMAIL & U.S. MAIL**

Robert Reinhart
Melissa Raphan
Ryan Mick
Dorsey & Whitney, LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402

   Re: Brennan, et al. v. Qwest Communications International, et al.
      Court File No. 07-cv-2024 ADM/JSM

Dear Counsel:

I am writing to request documents that were previously requested, but it appears were never produced. Based on our review of the records, there are some documents that Qwest produced for the named Plaintiffs (e.g., Supervisor Analysis Tool Reports, Dotlog Job History Reports, Sign-off data/time reports,) but not for all Plaintiffs. We request these documents for each opt-in Plaintiff. Finally, we do not understand why these documents were available before, and for some Plaintiffs, but not now, and not for all Plaintiffs. In particular, we would like to discuss the production of:

1. Supervisor Analysis Tool (SAT) Reports;
2. Dotlog Job History Reports;
3. Sign-off data/time reports;
4. Out-of-Garage and Back-to-Garage reports;
5. Coaching summaries and corresponding attachments; and
6. WFA time card/time entry records of Plaintiffs.

In addition, there are numerous redacted documents previously produced. Given there is a protective order in place and we are passed any certification issues, redaction is inappropriate. Unless you are asserting a privilege, please re-produce any and all redacted documents in their un-redacted form.

Plaintiffs also request that Qwest supplement to the present Interrogatory requests No. 10-13, as well as the WFA Payroll Hours, GPS Data, and WFA Dispatch Data previously produced.

4600 IDS Center, 80 South 8th Street, Minneapolis, MN 55402 • Telephone (612) 256-3200 • Facsimile (612)
Direct Dial (612) 256-3202 • Email kaster@nka.com • Web www.nka.com


EXHIBIT 4

Given the deadlines in this case, we would appreciate a response by Tuesday February 16, 2010.

                            Sincerely,

                            **NICHOLS KASTER, PLLP**

                            James H. Kaster

JHK/kjg



**DORSEY**
DORSEY & WHITNEY LLP

RYAN E. MICK
(612) 492-6613
FAX (612) 340-2868
mick.ryan@dorsey.com

February 19, 2010

**VIA E-MAIL AND U.S. MAIL**

James Kaster, Esq.
Nichols Kaster, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402

    Re:    *Brennan et al. v. Qwest Communications Int'l, et al.*
            Court File No. 07-cv-02024 (ADM/JSM)

Dear Jim:

I write in response to your letter of February 11 raising a number of issues regarding discovery. I will address the issues in the order presented in your letter.

*Numbered document issues*

Before individually addressing the several types of documents you mention, a few general observations are required.

First and foremost, Qwest has already produced (or will supplement, *see infra*), the WFA dispatch, time entry and GPS data underlying the several "reports" and "records" you identify. The first batch of that data was produced to Plaintiffs more than 18 months ago. Thus, Plaintiffs already have that substantive information; the different reports you identify simply reflect different ways that the data may be organized. Plaintiffs have had the ability to organize the data in the same or different ways since the summer of 2008.

Second, many of the documents you identify have never been subject to a document request. Plaintiffs have never submitted a document request for "Supervisor Analysis Tool Reports," "Dotlog Job History Reports," "Out-of-Garage and Back-to-Garage reports," or coaching summaries and corresponding attachments. Nonetheless, Qwest produced the data underlying these reports, as well as the Plaintiffs' personnel files in which any "coaching summaries" might be located.

Third, we previously resolved these issues with your office during the period of your absence due to medical leave. The parties corresponded regarding document production issues on February 5, 2008 (NKA); March 27, 2008 (NKA); April 22, 2008 (Dorsey); April 28, 2008 (NKA); May 12, 2008 (NKA); May 16, 2008 (Dorsey); June 3, 2008 (NKA); June 13, 2008 (Dorsey); June 19, 2009 (NKA, by e-mail); and June 25, 2008 (Dorsey). Rob Reinhart and I also met with Paul Lukas and Jessica Clay on May 27, 2008 to discuss document production issues. In the course of these discussions, we addressed the very same issues raised in your letter of February 11. For example, in Jessica Clay's letter of May 12, she made many of the

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • T 612.340.2600 • F 612.3
SUITE 1500 • 50 SOUTH SIXTH STREET • MINNEAPOLIS, MINNESOTA 554
USA  CANADA  EUROPE  ASIA-



EXHIBIT 5



Jim Kaster, Esq.
February 19, 2010
Page 2

same demands. See id. at 1, items 1-3, 5, 12. We addressed the same items with Mr. Lukas and Ms. Clay during the May 27 meet and confer. As a result of those discussions, Qwest agreed to produce the electronic data that was subsequently provided to you. See June 3, 2008 letter from Paul Lukas. Mr. Lukas asserted that, by accepting this data, Plaintiffs were not waiving any arguments regarding their entitlement to other documents. It is Qwest's position, however, that having not demanded production of other documents or data, or otherwise taken any steps to request production of the documents identified again in your letter of February 11 for more than 18 months after we last conferred regarding these issues – and until barely one month before the dispositive motion filing deadline in this case, Plaintiffs are not entitled to demand such production now.

Fourth, generally speaking, the documents Plaintiffs are now requesting have nothing to do with the issues set to be addressed in the Phase II, Stage I trial, namely, (1) whether Qwest's QJD performance measurement system forced Minnesota network technicians to work off the clock, as a class; and (2) whether Qwest knew that its QJD performance measurement system forced Minnesota network technicians to work off the clock, as a class. As such, Plaintiffs attempt to impose these additional discovery burdens on Qwest at this particular time is further unjustified.

Subject to the foregoing, let me address each numbered item in turn.

1. <u>Supervisor Analysis Tool Reports ("SAT Reports")</u>. As noted above, Plaintiffs have never requested SAT Reports. Further, as we explained in 2008, there is no corporate practice to regularly prepare SAT Reports, nor any centralized repository of such reports. The Supervisor Analysis Tool is simply a software package through which supervisors are able to access the WFA and GPS data that Qwest has previously produced to Plaintiffs. If a supervisor uses the Supervisor Analysis Tool to access data for a particular technician, that supervisor may or may not print a report showing that data. To the extent that supervisors printed reports and placed them in a Plaintiff's personnel file, those reports have been produced to Plaintiffs with the personnel files. Qwest will not produce additional documents.

2. <u>Dotlog Job History Reports ("Dotlog Reports")</u>. As noted above, Plaintiffs have never requested Dotlog Reports. In any event, as we also explained in 2008, Dotlog Reports are simply spreadsheet printouts of the WFA data we have already produced. Plaintiffs can organize and print the data in this or any other format. Qwest will not produce additional documents.

3. <u>Sign-off data/time reports</u>. Again, the WFA time entry data set forth in these reports has already been produced. To the extent Plaintiffs are demanding the particular format identified in Ms. Clay's letter of May 12, 2008, however, as we explained during our May 27, 2008 meet and confer, production of such documents would be prohibitively expensive and time consuming. Since you already have the underlying time entry data, it is Qwest's position that Plaintiffs would have to bear the costs of retrieving and producing those documents. Even if Plaintiffs are willing to do so, however, it is highly unlikely that those documents could be



Jim Kaster, Esq.
February 19, 2010
Page 3

produced any time soon. As we explained to Mr. Lukas and Ms. Clay, because of the nature of the technology at issue, retrieving such documents would require manual retrieval of documents on a technician-by-technician basis, for only a few months of reports at a time. Only one person can access the storage database at a time, and can only do so during non-business hours to avoid interference with Qwest's operations.[1] In light of these issues, Mr. Lukas and Ms. Clay agreed to accept the WFA and GPS data in lieu of these reports, which we believe to be the appropriate resolution. Nonetheless, we can certainly discuss this issue if you feel the need to do so.

    4. <u>Out-of-garage and back-to-garage reports</u>. As noted above, Plaintiffs have never requested these reports and, again, these reports merely organize the GPS data that has previously been produced to Plaintiffs. Regardless, to avoid further dispute on this issue, Qwest will produce the data contained in these reports to Plaintiffs.

    5. <u>Coaching summaries and corresponding attachments</u>. It is not clear what documents to which you are referring here. If you are referring to technician development plans or performance improvement plans, there is no centralized repository for such documents. Such documents, to the extent they exist, are located in the Plaintiffs' personnel files, which have already been produced.

    6. <u>WFA time card/time entry records of Plaintiffs</u>. This item appears to refer to the WFA data that Qwest has already produced (and will supplement). If you are referring to some other records, please advise.

**Previously redacted documents**

Qwest will produce unredacted copies of previously redacted documents, other than privilege redactions.

**Supplemental requests**

Qwest will supplement its responses to Interrogatory Nos. 10-13 within the time provided by the Federal Rules of Civil Procedure. Qwest will also supplement its production of WFA and GPS data, but will not make productions in response to serial requests. Fundamentally, it seems that our shared interest is simply to have both sides working from the same data set as we prepare for the Phase II, Stage I trial. To that end, we propose to produce the WFA, GPS and payroll data for the remaining active plaintiffs through January 31, 2010 and have the parties agree that only such data will be used in connection with trial. Please advise if you will agree to this proposal.

---

[1] Since October 2008, Qwest has stored the technicians' "remarks" from their WFA time reports in a manner that permits retrieval of that information. Qwest will produce those "remarks" for October 2008 to present. This also addresses the issue Ms. Desai raised in her e-mail of February 16.

DORSEY & WHITNEY LLP



Jim Kaster, Esq.
February 19, 2010
Page 4

    Please feel free to call if you have any questions, or if you would like to discuss any of these issues further.

Very truly yours,

Ryan E. Mick

REM/jkt

cc: Matthew Morgan, Esq. (*via electronic mail only*)
    Reena Desai, Esq. (*via electronic mail only*)
    Robert Reinhart, Esq.
    Melissa Raphan, Esq.



**DORSEY**
DORSEY & WHITNEY LLP

RYAN E. MICK
(612) 492-6613
FAX (612) 340-2868
mick.ryan@dorsey.com

March 1, 2010

**VIA E-MAIL**

Jim Kaster, Esq.
Matt Morgan, Esq.
Reena Desai, Esq.
Nichols Kaster, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402

    Re:    *Brennan et al. v. Qwest Communications Int'l, et al.*
            Court File No. 07-cv-02024 (ADM/JSM)

Dear Counsel:

    I write in response to Jim's letter of February 23, with respect to Plaintiffs' inquiries regarding Dotlog Job History reports, SAT reports, and "Coaching Summary" reports.

    As I have mentioned in previous correspondence, there is no corporate practice to prepare and send SAT reports, and there is no centralized repository for such reports. The Supervisor Analysis Tool is simply a software package through which supervisors are able to access the WFA and GPS data that Qwest has previously produced to Plaintiffs. If a supervisor uses the Supervisor Analysis Tool to access data for a particular technician, that supervisor may or may not print a report showing that data. To the extent that supervisors printed reports and placed them in a Plaintiff's personnel file, those reports have been produced to Plaintiffs with the personnel files.

    The same is true for the Dotlog Job History reports and "Coaching Summary" reports. There is no corporate practice to prepare and send such reports, and there is no centralized repository for such reports. These are dynamic reports that a supervisor may use to view data for a particular technician, and if a supervisor accesses such a report, he or she may or may not print a copy. To the extent that supervisors printed reports and placed them in a Plaintiff's personnel file, those reports also have been produced to Plaintiffs with the personnel files.

    Following your correspondence of February 23, we have investigated whether there are any means available by which Qwest could pull such reports because they have been "accessed" or in any other manner through which they may be readily available. There is no way to do so. Qwest does have a limited ability to search for such documents to the extent that they may be attached to e-mails, but that is a burdensome process requiring Qwest to access and download individual employees' e-mail files (active and archived) and then run keyword searches using terminology found in those reports. In light of the burden of such an effort, the timing of Plaintiffs' request, and the other factors set forth in my letter of February 19 regarding Plaintiffs' recent requests, Qwest believes that it has no obligation to undertake this effort. As a

**EXHIBIT 6**



Jim Kaster, Esq.
Matt Morgan, Esq.
Reena Desai, Esq.
March 1, 2010
Page 2

compromise, however, Qwest would be willing to search for these reports to the extent that they are attached to available e-mails in the e-mail files of the 19 "representative plaintiffs" that Plaintiffs have identified as potential trial witnesses. Please let me know if Plaintiffs will agree to this proposal.

Please feel free to call if you have any questions, or if you would like to discuss any of these issues further.

Very truly yours,

Ryan E. Mick

REM/jkt

cc: James Kaster, Esq. (*via electronic mail only*)
Matthew Morgan, Esq. (*via electronic mail only*)
Robert Reinhart, Esq.
Melissa Raphan, Esq.